**Ruth D. BOWDEN**

v.

**Edward B. GRINDLE et al.**

**Law Docket No. HAN–95–270.**

Supreme Judicial Court of Maine.

Submitted Jan. 4, 1996.
Decided April 30, 1996.

Barry K. Mills, Hale & Hamlin, Ellsworth, for Plaintiff.

William N. Ferm, Ferm, McSweendy & Collier, Ellsworth, for Defendant.

Before WATHEN, C.J. and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

Edward B. Grindle and Prudence E. Grindle appeal from the judgment entered in the Superior Court (Hancock County, *Mead, J.*) in favor of Ruth D. Bowden on her complaint seeking rescission of a deed given to the Grindles and on the amount awarded to the Grindles on their counterclaim based on unjust enrichment. The Grindles contend that the court erred in concluding that Bowden's mental illness was sufficient to toll the statute of limitations, in finding that Bowden lacked the requisite competence to convey the property, and in its computation of the damages awarded to them on their counterclaim. Finding no error, we affirm the judgment.

Bowden conveyed title to her farm in Blue Hill to the Grindles on April 3, 1984, reserving a life estate to herself. Six years and three months after this conveyance Bowden commenced an action seeking the rescission of the deed on the basis that in 1984 she lacked the mental capacity to convey her land. In the alternative, she claimed that the conveyance was the result of undue influence by the Grindles. The Grindles asserted the statute of limitations as an affirmative defense and counterclaimed, seeking damages for labor and material used to improve the property and for the return of various items.

Following the Grindles request for a jury trial the parties and the court agreed that the jury's verdict would be advisory on the equitable counts and binding on the issues triable of right to a jury. The jury found that Bowden had not commenced her action within the statute of limitations and awarded a clock to the Grindles on their counterclaim. The court concluded that it was bound by the jury's determinations and entered a judgment on all counts for the Grindles. Bowden appealed and the Grindles cross-appealed. Holding that the trial court erred when it considered itself bound by the advisory jury's verdict, we vacated the judgment.[1] *See Bowden v. Grindle,* 651 A.2d 347 (Me.1994).

On remand the Superior Court found that Bowden's claim was not time barred because Bowden was legally incompetent during the relevant period thus tolling the statute of limitations. The court also found that Bowden lacked the requisite competence to convey the property and entered a judgment in her favor on her claim for rescission of the deed. The court entered a judgment in favor of the Grindles on their counterclaim for unjust enrichment and awarded damages.

The record discloses the following: Ruth and Millard Bowden had no children and Edward Grindle, their nephew, lived with them off and on when he was growing up. Bowden was dependent on her husband who had complete responsibility for the finances and operation of their farm. Bowden had been treated for chronic depression her entire life, had been prescribed medications for anxiety and depression, and was hospitalized for depression for parts of December 1982 and January 1983. After she was released she received psychiatric treatment and medication as an out-patient. In September 1983 Millard died. The medical testimony revealed that after her husband's death Bowden's condition became acute and suicidal. Bowden's friends testified that her depression grew worse and she could not think, remember or understand what was going on. She does not remember much of what happened during the year following her hus-

---

1. We concluded that a statute of limitations defense when used to bar an equitable action is not an issue triable of right by a jury and therefore the court erred when it considered itself bound by the jury's finding that Bowden's claim was barred by the statute of limitations. *Bowden v. Grindle,* 651 A.2d 347, 349–50 (Me.1994). We also determined that the Grindles' counterclaim labeled *quantum meruit* was in fact an equitable claim for unjust enrichment and thus not triable of right by a jury. *Id.* at 349–51. Therefore we held that the court also erred when it considered itself bound by the jury's determinations on the Grindles' counterclaim for unjust enrichment. *Id.* at 350–51.

band's death. She took medications and was hospitalized "off and on."

Bowden does not remember discussing with the Grindles that she would convey the farm to them. Her recollection of meeting with an attorney to execute documents relating to the conveyance was similarly vague. Bowden's friend arranged for Bowden to meet with an attorney to settle her husband's estate. In the Spring of 1984 Bowden contacted her friend about arranging another appointment with the attorney. Bowden testified that she had no recollection of signing the deed conveying her farm to the Grindles and that she did not know what she was signing. She also had no recollection of signing a power of attorney she gave the Grindles. She did have a recollection, however, of asking the attorney to prepare the power of attorney after having been told it would be a good idea. She testified that she did not retain the attorney to prepare the deed and power of attorney although she was billed and paid for the legal services of drafting a will and a quitclaim deed. In the years following the conveyance Bowden continued to take medication and was hospitalized again in 1986. In 1986 Bowden learned of the conveyance in a conversation with a friend.

Edward Grindle testified that he was aware Bowden was taking medication but denied having knowledge of the reason or of the fact that Bowden was undergoing psychiatric care and had been suicidal. Edward characterized Bowden's emotional and medical condition after her husband's death as "very good for someone that had just lost their husband...." Prudence Grindle testified that she found Bowden very depressed on occasion and believed she was being treated for anxiety and depression. Edward acknowledged that Bowden was in a position of dependency on him and his wife after her husband's death and that he was the only male figure and close relative in her life. The Grindles testified that several times after her husband's death Bowden initiated discussions about conveying her farm to them but they did not accept her offer until April 1984. Bowden delivered the deed to the Grindles. Edward testified that he recorded the deed in 1986 despite Bowden's request that he not record the deed because it would cause trouble in the family.

## I.

■ The Grindles first contend that the court erred in concluding that Bowden's mental illness was sufficient to toll the statute of limitations. If a person is mentally ill when the cause of action accrues she may bring an action within the statutorily prescribed time limit after the disability is removed. 14 M.R.S.A. § 853 (Supp.1995). Pursuant to the tolling statute mental illness refers to "an *overall inability* to function in society that prevents plaintiffs from protecting their legal rights." *McAfee v. Cole,* 637 A.2d 463, 466 (Me.1994) (citations omitted). Whether a person is mentally ill within the meaning of 14 M.R.S.A. § 853 is a question of fact. *Morris v. Hunter,* 652 A.2d 80, 82 (Me.1994). We will not set aside a trial court's factual findings unless they are clearly erroneous, that is, there is no competent evidence in the record to support them. *F.D.I.C. v. Proia,* 663 A.2d 1252, 1254 (Me. 1995).

The expert and lay testimony supports the court's determinations that Bowden had suffered from psychiatric problems for which she had been hospitalized and medicated for decades and that her depression and anxiety were most acute after her husband's death in 1983. There was evidence that Bowden's thinking was impaired, that she could not remember, and that she experienced suicidal thoughts. Bowden testified that she had little recollection of meeting with the attorney and she did not know what she was signing when she executed the deed. Medical experts explained that memory loss is consistent with depression when a person becomes so preoccupied that the person's actions may not have registered. In the opinions of the experts, Bowden in 1984 was not able to make an informed rational judgment about conveying her property because she was experiencing the effects of her depression at that time, her cognitive thinking was impaired, and her problem of dependency rendered her helpless. The medical testimony also suggested that anyone she formed a

dependency on might have received a deed to her property.

■ Although there was conflicting testimony regarding Bowden's ability to drive and cook for herself, the medical testimony confirmed that there were times when Bowden had difficulty cooking her own meals, leaving the house, and driving. The weight of the evidence and credibility of witnesses is within the exclusive province of the factfinder. *State v. Sargent,* 656 A.2d 1196, 1200 (1995).

In 1986 Bowden was hospitalized three times for psychiatric disorders and during this period she learned from her friend that she had conveyed her property to the Grindles. The evidence reveals that Bowden's disability was not removed until her condition began to change in 1986 or 1987 when her condition began to improve. Bowden filed her complaint in July 1990 within six years from the time the disability was removed.

The court found that the medical testimony supported the conclusion that Bowden was legally incompetent during the period in question and concluded that the statute of limitations was tolled during this period. Based on the evidence the court's implicit determination that Bowden was suffering from a mental disability sufficient to toll the statute of limitations is not clearly erroneous.

## II.

■ After concluding that Bowden's incompetence tolled the statute of limitations, the court found it also impaired her capacity to make the disputed transaction. A grantor's incompetency alone is sufficient to rescind a deed. *Bragdon v. Drew,* 658 A.2d 666, 668–69 (Me.1995); *see also* RESTATEMENT (SECOND) OF PROPERTY § 34.5 (1992) ("A mentally incompetent person cannot make a valid ... inter vivos donative transfer."). The Grindles, however, contend that the court did not focus on the appropriate standard for assessing a grantor's competence or capacity to convey the property. They argue that Bowden had the capacity to convey the

property because she was "able to understand what [s]he is about." *Hovey v. Chase,* 52 Me. 304, 317 (1863).

In *Bragdon* we quoted with approval section 15 of the RESTATEMENT (SECOND) OF CONTRACTS (1981) which provides in relevant part:

(1) A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect

(a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or

(b) he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.

*Bragdon,* 658 A.2d at 668. There is sufficient evidence to support the court's finding that Bowden lacked the requisite mental capacity to deed the land. *Id.* The medical testimony reveals that at the time of the conveyance Bowden was not able to make an informed rational judgment about conveying her farm to the Grindles, her cognitive thinking was impaired, her dependency problem rendered her helpless, and anyone she depended on may have received a deed to her property.

## III.

■ Finally, the Grindles contend that the court awarded inadequate damages on their counterclaim for unjust enrichment by failing to compensate them adequately for their labor and money spent in the restoration of Bowden's hay fields. They contend that Bowden retained the benefit of the income potential of the fields.

■ "A damage award will be disturbed only if there is no rational basis to support it, that is, no competent supporting evidence in the record." *McCain Foods, Inc. v. Gervais,* 657 A.2d 782, 783 (Me.1995). " 'Recovery under the doctrine of unjust enrichment is measured by the value of the benefits that the plaintiff proves are actually received and retained by the defendant.' "[2]

---

2. To prevail on a claim for unjust enrichment the following elements must be proved: the plaintiff

conferred a benefit on the defendant; an appreciation or knowledge by the defendant of the

*ERA–Northern Assocs. v. Border Trust Co.,* 662 A.2d 243, 246 (Me.1995) (citation omitted). The cost of improvements, such as the value of the work, labor, services, and materials furnished, is evidence that may be considered in determining the value of the benefit conferred. *A.F.A.B., Inc. v. Old Orchard Beach,* 639 A.2d 103, 106 (Me.1994) (citations omitted).

The court awarded the Grindles damages in the amount of $3,674, plus costs. The court determined that the amount of damages based on the Grindles' expenses for the following items represented quantifiable benefits retained by Bowden: insurance, lime, firewood, well, soil test, and taxes. There is competent evidence in the record to support the court's damage award. The Grindles produced receipts and testified regarding these expenses. The Grindles, however, did not prove the value of the hay producing fields that they contend Bowden retained. *See ERA–Northern Assocs.,* 662 A.2d at 246. Bowden did not make any profit as a result of Edward's work renovating the fields. Furthermore, because he did not keep records of the hours he worked, the Grindles were required to estimate the amount of the time expended to improve the property. *See Williams v. Ubaldo,* 670 A.2d 913, 917 (Me. 1996) (damages are not recoverable when uncertain or speculative). Based on a review of the evidence the court was not compelled to award the Grindles a greater amount of damages on their counterclaim for unjust enrichment.

Judgment affirmed.

All concurring.

benefit; and the defendant's acceptance or retention of the benefit was under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*ERA–Northern Assocs. v. Border Trust Co.,* 662 A.2d 243, 245 (Me.1995) (citing *Bowden,* 651 A.2d at 350).