STATE OF MAINE

CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-249
TDW -CUM -8/11/2000

McTEAGUE, HIGBEE, MacADAM,
CASE, COHEN & WHITNEY, P.A.,

Plaintiffs

v.

JAMES J. MacADAM and
MacADAM & McCANN, P.A.,

Defendants

ORDER ON MOTION FOR
REFEREE AND CROSS
MOTION FOR INJUNCTIVE
RELIEF

DONALD L. GARBRECHT
LAW LIBRARY

AUG 21 2000

This action arises out of the departure of one member of a law firm, taking most if not all of the clients he represented with him, and an ensuing dispute over attorneys fees and expenses subsequently received that are attributable, at least in part, to work performed or expenses incurred before the departure.

Before the court is a motion by the plaintiff McTeague, Higbee, MacAdam, Cohen & Whitney, P.A. ("McTeague Higbee") seeking the appointment of a referee pursuant to M.R. Civ. P. 53 to collect all attorneys fees and expenses payable to James MacAdam with respect to claims of clients whose files MacAdam took with him when he abruptly departed from McTeague Higbee on Saturday, April 14, 2000 and to determine the respective rights of the parties to those funds.

Also before the court is a motion by defendants James MacAdam and MacAdam & McCann P.A. (the "MacAdam defendants") seeking a temporary restraining order on preliminary injunction to require McTeague Higbee to recall notices it sent to various workers compensation insurers informing them that

McTeague Higbee had a claim to attorneys fees and expenses generated as a result of any settlement or awards to former McTeague Higbee clients currently represented by MacAdam.

Defendants do not argue that McTeague Higbee is not entitled to any of the funds in question. Indeed, they acknowledge that McTeague Higbee is at least entitled to recoup the disbursements and direct expenses incurred by the firm before MacAdam's departure, to the extent that recoveries are obtained with respect to clients whom MacAdam took with him.[1] Beyond that issue, there appears to be considerable disagreement between the parties. However, defendants acknowledge that McTeague Higbee would at least have a right to attorneys fees awarded by the Workers Compensation Commission for work performed prior to April 14, 2000 in workers compensation cases involving pre-1993 injuries.[2]

Determining the respective rights of the parties is complicated by the fact that there are apparently in excess of 450 clients whose cases could result in a post April 14, 2000 recovery. In each of those cases, the respective rights of the parties may differ and determining those rights may require factual inquiries that are specific to

[1] MacAdam removed and took with him the files of approximately 600 clients when he left over the April 14 weekend. Although he did not receive the prior permission of any clients to remove their files from the firm, most of those clients subsequently have expressed their desire to have MacAdam continue representing them at his new firm. Although there are numerous other issues between the parties, the focus of this order -- and what the court considers to be the major area of disagreement between the parties -- is how to determine the respective rights of MacAdam, on the one hand, and McTeague Higbee on the other, to attorneys fees generated as a result of settlements, judgments, or workers compensation awards occurring after April 14, 2000 with respect to a client as to whom MacAdam performed work when he was still at McTeague Higbee prior to April 14, 2000.

[2] As the court understands defendants' position, McTeague Higbee's claim to such fees is acknowledged without prejudice to certain counterclaims that have been asserted by the MacAdam defendants.

each of the individual files upon which a post April 14, 2000 recovery is obtained. [3]
The issue is further complicated by the different categories of claims involved, including but not necessarily limited to workers compensation claims arising from pre-1993 injuries, workers compensation claims resulting in lump sum settlements, workers compensation claims resulting in weekly benefits, and standard personal injury claims.

Faced with this complexity and the potential need to make individualized determinations in each case in which there is a post April 14, 2000 recovery generating a right to litigation expenses and attorneys fees, it would appear to the court that utilization of a referee pursuant to Rule 53 may be called for, at least with respect to potentially complex damage determinations.   In this respect, Rule 53 provides that in matters involving an accounting, reference to a referee may be made without the need to find the existence of an "exceptional condition" requiring such a reference.  See Rule 53 (b) (2).  Cf. Stauble v. Warrob, Inc., 977 F.2d 690, 694 (1st Cir. 1992) (construing Federal counterpart to M.R. Civ. P. 53).   In contrast, an exceptional circumstance must exist before fundamental issues of liability may be delegated to a referee. See id. at 695.

At this juncture in the case, however, it is premature to decide whether a referee should be appointed.  Although it is possible that the case can be resolved without the need for individual determinations with respect to post April 14

---

[3]    At a minimum, unless agreed to be the parties, it will be necessary to determine any disbursements or expenses incurred by McTeague Higbee with respect to each claim on which a post April 14, 2000 recovery is obtained by someone now represented by MacAdam.  It is possible that it may also be necessary to determine in each case how much work was performed prior to April 14, 2000 and how much after.

recoveries by former McTeague clients, a referee may well be necessary to determine damages once the basic liability issues have been resolved. A referee might also conceivably be necessary to undertake a preliminary categorization of the 450 or so files involved so as to allow the court to determine the liability issues. Finally, there might be some extraordinary condition here that would justify some further employment of a referee.

However, as noted above, no decision on whether or not to appoint a referee for any of the above purposes can be made at least until the court has the benefit of further legal submissions to be filed by the parties as set forth below.

Defendants argue that no referee may be appointed because this case involves claims triable to a jury. See M.R. Civ. P. 53 (b) (2). This overlooks that McTeague Higbee's claim for recovery of litigation expenses and attorneys fees in cases which MacAdam took with him is an equitable claim for unjust enrichment as to which there is no jury trial right. See, e.g., Maine Shipyard & Marine Ry. Co. v. Lilley, 2000 ME 9, ¶ 11, ¶ 15, 743 A.2d 1264, 1267, 1268; Bowden v. Grindle, 651 A.2d 347, 249-50 (Me. 1994). Avery v. Whatley, 670 A.2d 922 (Me. 1996), relied on by the MacAdam defendants, is distinguishable because the plaintiffs in that case were seeking a legal damage remedy as an alternative to equitable relief for unjust enrichment. 670 A.2d at 924-25. In this case, McTeague Higbee is seeking purely an equitable remedy consisting of restitution of the portions of the fees and expenses that rightfully

4

belong to that firm.[4]

Defendants further argue that the specific relief sought by McTeague Higbee goes beyond the appointment of a referee and amounts to either a preliminary injunction or the appointment of a receiver. On this issue the court agrees. If a referee is appointed, the duties of such a referee should be narrowly confined. However, this does not mean that the court itself cannot enter certain injunctive relief governing the distribution of funds while this action is pending. However, the court will limit such relief at this time to that required (1) to permit the court to ascertain the relevant facts and determine the respective rights of the parties and (2) to provide the McTeague Higbee firm with the recoupment of those expenses to which it is concededly entitled.

In part, this is because, as defendants assert, injunctive relief is not ordinarily granted where monetary relief is available. See Merrill Lynch v. Bishop, 839 F. Supp. 68, 70 (D. Me. 1993).[5] Moreover, while injunctive relief would certainly be appropriate to govern the disposition of fees and expenses received on an ongoing basis in the future, the court is not in a position at this time to determine the respective rights of the parties as to such fees and expenses -- except in the case of

---

4   Certain of McTeague Higbee's other claims are legal in nature, as are some of the MacAdam defendants' counterclaims, but the availability of a jury trial on those claims does not alter the conclusion that McTeague Higbee's unjust enrichment claim is an equitable claim that will be tried to the court.

5   In response to defendants' argument on this issue, McTeague Higbee argues that where there is a significant issue as to collectability, irreparable harm may still exist even in a case where the availability of monetary relief would otherwise preclude an injunction. The court does not necessarily disagree but on the record as it stands, there is insufficient evidence of a potential collectability problem to warrant injunctive relief on that basis.

5

recoupment of disbursements concededly owed to McTeague Higbee. Other than with respect to such disbursements, neither party has established any likelihood of success on the merits with respect to the unjust enrichment claims.

On the MacAdam defendants' cross motion for injunctive relief relating to the notices sent by McTeague Higbee to insurers, the court agrees that such notices appear to be inconsistent with the principle that liens may not be asserted on workers compensation benefits. The court also agrees that possible irreparable harm to MacAdam's current clients (and McTeague Higbee's former clients) may result if workers compensation insurers, other insurers, or other similar entities who are faced with claims from present MacAdam and former McTeague Higbee clients delay in settling or paying those claims because of uncertainty as to the respective rights of MacAdam and McTeague Higbee to the attorneys fee portions of such recoveries. However, at this time, the court does not find that the MacAdam defendants have made a sufficient showing that such irreparable harm is in fact occurring, although it will direct McTeague Higbee to inform those insurers to which it has previously sent notices that monies subject to competing claims of McTeague Higbee and the MacAdam defendants may be deposited into an account that will be subject to the supervision of the court in this action.

Thus, the appropriate remedy, in the court's view, is for all settlements and awards subject to competing claims of McTeague Higbee and of the MacAdam defendants to be paid into an account subject to court control, as per the court's oral order on June 2. The court does not adopt McTeague Higbee's proposal as to the

6

interim division of any fees and expenses generated by post April 14 recoveries except in one respect -- that McTeague Higbee should be reimbursed for any disbursements or expenses it previously incurred in any case in which a post April 14 recovery generates funds available to reimburse such expenses. The court understands that the MacAdam defendants have already voluntarily begun to make some of these reimbursements. In other respects the MacAdam defendants are not restrained in the disposition of the funds in those accounts at this time. Without prejudice to whether any additional interim relief might be awarded in the future, it is the court's present intention to proceed as expeditiously as possible to determine the parties' respective rights with respect to fees generated by post April 14 recoveries and to appoint a referee to determine any resulting damage issues on which such an appointment would be appropriate. The remaining claims of the parties will thereafter be separately set for trial.

Accordingly, the pending cross motions of the parties are granted to the extent set forth below and in other respects are denied.

Accordingly, the court orders as follows:

1.     To allow the court to ascertain the respective rights of the parties to fees and expenses generated from post April 14, 2000 recoveries, defendants are hereby ordered to supplement within 14 days of the date of this order the accounting previously filed on June 12, 2000 pursuant to the court's oral order of June 2, 2000 and to provide the following information with respect to fees or expenses received by defendants subsequent to April 14, 2000 with respect

to cases of clients formerly represented by James MacAdam when he was practicing with McTeague Higbee:

  a. Total fees and expenses received between April 14, 2000 and the date of the supplemental accounting;

  b. Aggregate amount of those fees that have been spent or disbursed by defendants;

  c. The specific cases (identified at a minimum by client and docket number) in which post April 14 recoveries have been obtained;

  d. The overall amount of the judgment, award, or settlement obtained in each of the individual cases identified in (c) above;

  e. The amount of fees and expenses resulting from each judgment, award, or settlement identified in (c) above and whether these fees and expenses were calculated as a percentage of the judgment, award, or settlement or on some other basis;

  f. The amount paid to or received by the client from each judgment, award or settlement identified in (d) above;

  g. The nature of the recovery generating fees in each such case (e.g., lump sum settlement, award of weekly benefit payments, settlement of tort claim, etc.);

  h. Whether and to what extent in each case, the amounts in question are specifically attributable to attorneys fees or to expenses and disbursements.

2. After supplementing the accounting as set forth above, defendants are ordered to further update and supplement the information in question every 30 days by providing the same information for any new fees and expenses recovered in each succeeding 30-day period.

3. Pending further order of the court, by agreement of the parties

8

without prejudice to any further motions that may be filed on the subject of confidentiality, the accountings filed by the MacAdam defendants pursuant to paragraphs 1 and 2 above shall be impounded and kept under seal by the Clerk's office and shall be kept confidential and shall not be further disseminated by the parties and their counsel. Either party may propose a more detailed confidentiality order after conferring with the opposing party in an attempt to reach agreement on this issue. As per the Court's oral order of June 2, by agreement of the parties, paragraphs 6 and 7 of the counterclaim are impounded and shall not be made available as part of the public court file.

4.    Within 45 days from the date of this order both parties are ordered to submit statements setting forth their legal and factual positions as to their respective claims with respect to fees and expenses attributable to post April 14, 2000 recoveries, including but not limited to their respective positions and the legal basis advanced in support thereof with respect to:

a.    Fees attributable to lump sum settlements obtained after April 14 in cases where work was performed by MacAdam both before and after April 14;

b.    Fees attributable to workers compensation cases involving pre-1993 injuries;

c.    Fees resulting from awards of weekly benefit payments in workers compensation cases;

d.    Fees resulting from settlements or judgments in personal injury cases;

e.    Expenses incurred and disbursements made by McTeague Higbee with respect to cases resulting in recoveries by persons now

9

represented by defendants, to the extent not already resolved by defendants' concession at the June 2, 2000 hearing;

   f.  Fees or expenses attributable to any other specific categories of cases that either party believes are at issue in this case;

   g.  The factual issues that either party contends must be decided in order to determine the parties' respective rights with respect to each case in which post April 14 fees or expenses are recovered.

5.  In the meantime, defendants are ordered to continue placing all relevant fees and expenses they receive in the two accounts identified in their June 12, 2000 accounting.[6] Pending further orders of the court, defendants are not restrained from making expenditures from those accounts so long as (a) McTeague Higbee is reimbursed for disbursements previously made, as set forth below, and (b) defendants' aggregate expenditures are accounted for in the accountings filed pursuant to paragraphs 1 and 2.

6.  The MacAdam defendants shall promptly inform McTeague Higbee of any cases in which any awards, settlements, or judgments are received in which funds are available to reimburse McTeague Higbee for any disbursements previously made with respect to those cases. Once the amount of the disbursements is ascertained, the MacAdam defendants shall promptly reimburse McTeague Higbee for those disbursements.

7  McTeague Higbee shall inform those insurers to which it has previously sent notices that monies subject to competing claims of McTeague

---

[6] If McTeague Higbee takes issue with defendants' understanding that it is not asserting any claim to fees related to weekly workers compensation benefit payments for weeks after April 14, 2000 and for hours of work expended by defendants after April 14, 2000, McTeague Higbee's position on those issues should be set forth in its submission pursuant to paragraph 4 above.

10

Higbee and the MacAdam defendants may be deposited into an account that will be subject to the supervision of the court in this action.

8.     The MacAdam defendants shall timely notify McTeague Higbee of any settlements or awards in workers compensation cases relating to pre-1993 injuries so as to allow McTeague Higbee to assert any claim that it may be entitled to make before the Workers Compensation Commission for attorneys fees.

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79 (a).

Dated: August ___11___, 2000

Thomas D. Warren
Justice, Superior Court

11

Date Filed __04-18-00__      __CUMBERLAND__     Docket No. __CV 00-249__

County

Action __INJUNCTIVE RELIEF__

MCTEAGUE, HIGBEE, MACADAM, CASE, COHEN, WHITNEY, P.A.

DONALD L. GARBRECHT
LAW LIBRARY

AUG 21 2000

JAMES J. MACADAM
ALEXANDER F. MCCANN
MACADAM MCCANN PA

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JAMES B. HADDOW, ESQ 775-0200<br>PO BOX 9733, PORTLAND 04104<br><br>Michael Martin, Esq | DANIEL J. MITCHELL, ESQ.<br>PETER J. RUBIN, ESQ. (All)<br>P.O .BOX 9729<br>PORTLAND, MAINE 04104-5029<br>207-774-1200 |

Date of
Entry

2000