**2007 ME 70**

**MAINE EDUCATION ASSOCIATION**

v.

**MAINE COMMUNITY COLLEGE SYSTEM BOARD OF TRUSTEES.**

Supreme Judicial Court of Maine.

Argued: April 11, 2007.
Decided: May 31, 2007.

Jonathan S.R. Beal (orally), Portland, for plaintiff.

Linda D. McGill (orally), Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for defendant.

Panel: CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

ALEXANDER, J.

[¶ 1] The Maine Education Association (MEA) appeals from the judgment of the Superior Court (Kennebec County, *Marden, J.*) denying its motions for remand to an arbitrator and for relief from judgment. The MEA asserts that the arbitrator's award was not legally enforceable as written and, therefore, the court should have either (1) exercised its power to remand for clarification, or (2) granted relief from its prior judgment confirming the arbitration award. Because the MEA is judicially estopped from asserting in this proceeding a position inconsistent with a position on which it prevailed in the original proceed-

ing to confirm the arbitration award, we affirm the judgment of the Superior Court.

## I. CASE HISTORY

[¶ 2] In 1998, with the support of the MEA and the Maine Community College System, the Legislature enacted P.L. 1997, ch. 763, § 4 (effective Sept. 1, 1998), adopting 20–A M.R.S.A. § 12722 (Supp.1999), to change the College System retirement program. Among other things, the new law permitted certain College System employees who were eligible to retire, to retire and receive full retirement benefits from the Maine State Retirement System, while remaining employed at full pay and participating in a new defined contribution retirement program.

[¶ 3] In 1999, after several employees had elected this retire but continue employed option, a dispute arose regarding the College System's obligation to continue payment for certain employment benefits specified in the College System's collective bargaining agreement. The MEA filed a grievance seeking continued payment of the benefits. After reaching an impasse within the College System, the grievance proceeded to arbitration.

[¶ 4] During the course of the arbitration proceeding, legislation was enacted, P.L. 2001, ch. 442, § 5 (effective Sept. 21, 2001), which clarified that some of the benefits at issue should be addressed by treating the employees as retirees for purposes of eligibility. The August 2002 arbitration decision and award ordered the College System to repay the employees for the costs of the benefits the College System had declined to pay and directed the College System "to provide such insurance benefits unless prohibited by law from providing these benefits." In a footnote, the arbitrator recognized the 2001 amendment to the law and stated:

> The College argues that a 2001 amendment now provides that employees in positions, such as the grievants, can now receive only the health and dental coverage provided under the retirement law. I am uncertain at this time as to whether this amendment does in fact apply to persons in the grievants' situation. Obviously, any remedy must be consistent with Maine Law. It should also be stated that the amendment does not appear to cover life insurance benefits.

[¶ 5] Following the award, neither party filed an application to vacate the award within the ninety days to file such an application specified by 14 M.R.S. § 5938(2) (2006). Nor did either party seek any clarification of the award from the arbitrator.

[¶ 6] In April 2003, the College System paid the employees for their health and dental insurance costs for the period September 2000 through September 2001. The College System contended then, and has contended since, that this payment satisfied its obligation pursuant to the arbitration award.

[¶ 7] The next year, on February 13, 2004, the MEA filed a motion with the Superior Court, asking the court to confirm the arbitration award pursuant to 14 M.R.S. § 5937 (2006).[1] In its motion, the MEA asserted that, following the award, the College System had reimbursed the employees for health and dental insurance expenses from September 2000 to September 2001; however, the College System had refused to provide insurance coverage

---

1. Title 14 M.R.S. § 5937 (2006) provides:
    Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 5938 and 5939.

after this date and was, therefore, not in compliance with the award. In its response to the MEA's motion, the College System asserted that it construed such coverage as prohibited by the 2001 amendment to the law and, therefore, it was in full compliance with the award.

[¶ 8] At oral argument before us, the parties acknowledged that during the Superior Court proceedings, there was some discussion of the prospect of a remand to the arbitrator. Before the Superior Court, the MEA asserted that it did not want a remand to the arbitrator.

[¶ 9] In June 2004, the court issued a judgment granting the MEA's motion to confirm the award. The court concluded that since neither party had filed a timely motion to vacate or modify the arbitrator's award pursuant to 14 M.R.S. §§ 5938–5939 (2006),[2] the court's authority was limited to confirming the award.

[¶ 10] The court noted that although the arbitrator mentioned the 2001 amendment in its decision, it "made no determination regarding its effect on the [teachers'] benefits" and, therefore, "[a] remand for the purpose of asking the arbitrator to explore that relationship within the limits of [the] contract would appear to be in order." However, the court concluded that it lacked authority to remand this case to the

---

2. Title 14 M.R.S. § 5938 (2006) provides in pertinent part:

    **1. Vacating award.** Upon application of a party, the court shall vacate an award where:

. . . .

    C. The arbitrators exceeded their powers;

. . . .

    F. The award was not made within the time fixed therefore by the agreement or, if not so fixed, within such time as the court has ordered, and the party has not waived the objection.

. . . .

    **2. Application.** An application under this section shall be made within 90 days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud or other undue means, it shall be made within 90 days after such grounds are known or should have been known.

    **3. Rehearing.** In vacating the award on grounds other than stated in paragraph E of subsection 1 the court may order a rehearing before new arbitrators chosen as provided in the agreement, or in the absence thereof, by the court in accordance with section 5929, or, if the award is vacated on grounds set forth in paragraphs C and D of subsection 1 the court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with section 5929. The time within which the agreement requires the award to be made is applicable to the rehearing and commences from the date of the order.

    **4. Confirmation of award.** If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award.

Title 14 M.R.S. § 5939 provides in pertinent part:

    **1. Application.** Upon application made within 90 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

    A. There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

    B. The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

    C. The award is imperfect in a matter of form, not affecting the merits of the controversy.

    **2. Modification or correction of award.** If the application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected. Otherwise, the court shall confirm the award as made.

    **3. Joinder of application.** An application to modify or correct an award may be joined in the alternative with an application to vacate the award.

arbitrator. Neither party appealed the Superior Court's decision.

[¶ 11] Ten months later, in April 2005, the MEA filed a motion for remand to the arbitrator, pursuant to 14 M.R.S. § 5937. The Superior Court docketed the motion for remand under a new docket number, CV–05–113. The College System filed its opposition to a remand on May 5, 2005. On May 16, 2005, the MEA filed a motion for relief from judgment in the original action, pursuant to M.R. Civ. P. 60(b)(6). In that motion, the MEA argued that, if the motion for remand is barred by res judicata, the court should grant relief from the judgment to confirm the arbitration award.

[¶ 12] After hearing, the court denied both the MEA's motion for remand to the arbitrator and its motion for relief from the June 2004 judgment. The court found that remand to the arbitrator was barred by the doctrine of res judicata because the MEA did not originally ask for a remand, but asked the court only to confirm the award. The court justified denying both motions by noting that "[t]he issue within these motions is identical to that fully discussed and briefed in the previous proceeding."

[¶ 13] The MEA then brought this appeal. The notice of appeal was filed a few days after the twenty-one-day filing deadline set by M.R.App. P. 2(b)(3). However, the MEA filed a timely motion for extension of time to file its appeal pursuant to M.R.App. P. 2(b)(5). The trial court granted the motion, thus the appeal is properly before us.

## II. LEGAL ANALYSIS

[¶ 14] Res judicata bars the relitigation of issues that were, or might have been, litigated in a prior action between the same parties or their privies, when a valid final judgment was entered in the prior action. *Norton v. Town of Long Island*, 2005 ME 109, ¶ 17, 883 A.2d 889, 895; *Dep't of Human Servs. v. Comeau*, 663 A.2d 46, 48 (Me.1995)

[¶ 15] While the MEA's motion to remand to the arbitrator was docketed as a new action, the MEA's motion to remand and the separate motion for relief from judgment really sought to amend the judgment in the original 2004 action. Thus, there is no new, independent action to which principles of res judicata could be properly applied. The MEA's motions, seeking relief it had opposed during the original consideration of the action, are more appropriately analyzed under principles of judicial estoppel.

[¶ 16] In *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), the United States Supreme Court defined judicial estoppel as a doctrine which " 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' " *Id.* at 749, 121 S.Ct. 1808 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)). "Unlike the doctrine of issue preclusion, judicial estoppel does not require that the issue have been actually litigated in the prior [phase of the] proceeding." *Thore v. Howe*, 466 F.3d 173, 181 (1st Cir.2006). *See also New Hampshire v. Maine*, 532 U.S. at 748–49, 121 S.Ct. 1808; 18 James Wm. Moore, *et al.*, Moore's Federal Practice § 134.30 at 134–69 (3d ed. 2006).

[¶ 17] In *New Hampshire v. Maine*, the Supreme Court indicated that the contours of the judicial estoppel doctrine are not sharply defined, and there is no mechanical test for determining its applicability. 532 U.S. at 750–51, 121 S.Ct. 1808. The purpose of the doctrine is to protect the integrity of the judicial pro-

cess. *Id.* at 749–50, 121 S.Ct. 1808. The Supreme Court identified several factors which inform the decision whether to apply the doctrine, but the Court also stressed these factors were neither "inflexible prerequisites" nor "an exhaustive formula." *Id.* at 751, 121 S.Ct. 1808.

[¶ 18] The three factors suggested by the Supreme Court are: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception of inconsistent court determinations, suggesting that either the first or second court was misled; and (3) whether an unfair advantage or detriment would be created. *See id.* at 750–51, 121 S.Ct. 1808; *Thore,* 466 F.3d at 181. We addressed judicial estoppel in *Linnehan Leasing v. State Tax Assessor,* 2006 ME 33, ¶ 25, 898 A.2d 408, 414, stating:

> To judicially estop an entity from asserting a position in a subsequent legal action (1) the position asserted in the subsequent legal action must be clearly inconsistent with a previous position asserted; (2) the party in the previous action must have successfully convinced the court to accept the inconsistent position; and (3) the party must gain an unfair advantage as a result of their change of position in the subsequent action.

*Id.* (*citing New Hampshire v. Maine,* 532 U.S. at 750–51, 121 S.Ct. 1808).

[¶ 19] In this case, the arbitration award was issued in 2002. Neither party initiated a timely effort to vacate, amend, or clarify the award. The College System's interpretation of the award was indicated at the time of its payments in early 2003 and has not changed since that time. The MEA did not initiate the action to confirm the award until 2004. In that original action, the MEA asserted that it did not want the award remanded to the arbitrator. The court acted in accordance with the MEA's position and confirmed the award without a remand. No appeal was taken from the 2004 judgment.

[¶ 20] Looking to the judicial estoppel indicators identified by the Supreme Court, the MEA now seeks the remand it previously opposed. Its position is inconsistent with its earlier position. Judicial acceptance of the MEA's position would result in inconsistent trial court determinations, remanding after holding that the court lacked authority to do so. Acceptance of MEA's position would create a significant detriment, further prolonging this already lengthy proceeding by a belated request for a remand that could have been sought five years ago. The doctrine of judicial estoppel bars the relief sought by the MEA. The trial court did not commit an error of law or abuse its discretion in denying the relief requested.

The entry is:

Judgment affirmed.