Robert F. ALMEDER et al.

v.

TOWN OF KENNEBUNKPORT et al.

Docket No. Yor–12–599.

Supreme Judicial Court of Maine.

Decided: Dec. 9, 2014.

## ORDER ON MOTIONS FOR RECONSIDERATION

Two motions for reconsideration are pending before us regarding the public's use of Goose Rocks Beach in the Town of Kennebunkport.[1] *See* M.R.App. P. 14(b). The Town and the State of Maine have each moved for reconsideration of our decision in *Almeder v. Town of Kennebunkport*, 2014 ME 12, issued on February 4, 2014. The plaintiffs oppose the motions, and we held oral argument on the motions.

By this order, we DENY the State's motion for reconsideration of our decision regarding the public trust doctrine, and we DENY in part and GRANT in part the Town's motion seeking reconsideration of the public trust issue and a remand for the trial court to complete a parcel-by-parcel factual analysis of the Town's public prescriptive easement claim. We simultaneously reissue the opinion as amended.

Goose Rocks Beach has been the subject of significant litigation and substantial public attention since at least 2009, when a number of Beachfront Owners of land on the ocean at Goose Rocks Beach filed a complaint against the Town of Kennebunkport and others in order to clarify their private ownership rights to the sand, both

---

1. Two members of the class of Backlot Owners also moved for reconsideration; we have previously denied that motion.

wet and dry, in front of their homes. Because it appears that some confusion exists regarding the genesis of this case and the outcome in *Eaton v. Town of Wells*, 2000 ME 176, 760 A.2d 232, we provide additional background to give a more comprehensive perspective on the matter. The evidence in the record reflects the following recent history of the lots at issue.

Of the 110 parcels of property comprising the oceanfront at Goose Rocks Beach, the Town or the Kennebunkport Conservation Trust owns 9, and the remaining lots are owned by approximately 85 private individuals or entities. In this way, contrary to the urgings of the Town, the ownership of Goose Rocks Beach is decidedly different than the ownership of the oceanfront property at issue in *Eaton*. In *Eaton*, the beachfront land in dispute was owned by a single family that had assumed that the Town owned the sandy beach in front of its oceanfront property. *Id.* ¶¶ 8–9, 34, 39.

Except for the publicly owned portions of the Beach, until the mid–2000s, the Town regularly acknowledged the private ownership of the sandy portions of the Beach, subject only to the public trust interests in the intertidal zone. Recognizing that ownership, in the mid–1970s, the Town undertook an effort to have the beachfront owners at the time donate their Beach property to the Town's Conservation Trust. That effort was only marginally successful. Thereafter, the Town selectmen assured the owners that "[t]here was, and is, no threat on the part of any selectmen to force anyone into donating their land," nor any attempt to take the Beach from private owners by means of eminent domain. During that same time frame, as a result of a dispute regarding a private beachfront owner's use of the Beach in front of her own home to allow her dog to run, the Town recognized that, in that instance, the land in question was

privately owned down to the low water mark and that the Town's dog ordinance, applicable on public land, did not apply to that privately owned section of Beach. Then, in 1979, the Town completed a public access inventory in which it noted that Goose Rocks Beach was *"partly"* owned by the Town. (Emphasis added.)

This same treatment of the Beach as partially public and partially private prevailed over the next few decades. The police and other Town officials reminded members of the public that they must "respect the rights of Private Property Owners" and that some portion of the Beach is considered "the 'private' end of the beach," and admonished members of the public to obtain permission from the property owners on whose portion of the Beach the members of the public wished to take such actions as starting fires. Even as late as 2009, the Town's comprehensive plan stated that "[m]ost of Goose Rocks Beach is privately owned; the public portion of the beach is very popular."

In 2005, when one of the Beachfront Owners complained about an individual's use of the Beach in front of her property for purposes beyond mere general recreation, the Town's attorney advised the Town that it might be possible to establish a public prescriptive easement claim to all sandy portions of the Beach.

Against this backdrop, the Beachfront Owners filed their suit in 2009 seeking clarification of their ownership rights given the Town's recent advancement of the view that the Beach was public. As the litigation progressed, the Town negotiated an agreement with approximately two-thirds of the owners of beachfront property to obtain a public easement across the dry and wet sand in front of the owners' parcels. Those agreements, signed in summer 2012, allow members of the public to continue to engage in ordinary recreational

activities on the Beach. The remaining third—the Beachfront Owners who are defending this appeal—declined the Town's terms, as they are entitled to do. Those remaining Beachfront Owners indicated that, although they would continue to allow general public recreation by permission on the Beach, they would not agree to cede any property rights to the Town.

We now address the specifics of the two pending motions for reconsideration.

### A. Public Trust in the Intertidal Zone

■ In our original decision, we concluded that questions related to the public trust rights in the intertidal zone of the Beach were not yet before us, and we remanded the matter for further adjudication. In their respective motions, the State and the Town each assert that the trial court properly ruled on this issue, and they ask that we reconsider our decision to decline to rule on the public trust doctrine as it applies to the intertidal zone of the Beach. For the reasons that follow, we deny the State's motion for reconsideration and that portion of the Town's motion requesting reconsideration of the public trust issue.

In the complaint that initiated this action, the Beachfront Owners asserted a claim for a judgment declaring their exclusive right, title, interest, or estate in their portions of the Beach "subject only to the public rights of usage in the Intertidal Property established by the Colonial Ordinance of 1647" (Count I) and a claim to quiet title "subject to the public rights in the Intertidal Property established under the Colonial Ordinance of 1647 to fish, fowl and navigate only" (Count II). Thus, the Beachfront Owners acknowledged the public's interest in the intertidal zone and sought an adjudication of the nature or extent of their rights subject to that interest.

With its answer to the complaint, the Town asserted nine counterclaims seeking a declaration that it owned, or the public had rights to, the beach in fee simple, or through adverse possession, acquiescence, prescription, dedication and acceptance, custom, easement, or implied/quasi easement, and seeking offset taxes. The Town's counterclaim asserting a tax offset was dismissed on August 18, 2010. Three of the remaining eight counterclaims—fee simple (Count I), adverse possession (Count II), and acquiescence (Count III)— seek a judgment of the Town's title to "Goose Rocks Beach" without reference to either the intertidal zone or the "fishing, fowling, and navigation" phrasing generally associated with the public trust doctrine. None of these three claims raises the issue of the public trust rights to the intertidal zone, and, in any event, none has yet been decided by the Superior Court.

Three more—dedication and acceptance (Count V), easement (Count VII), and implied/quasi easement (Count VIII)—contain general assertions that the Town and/or the public took actions on "the beach," including using "the beach" for fishing, fowling, and navigation. To the extent that any of these statements in the pleadings can be interpreted to raise an actual case or controversy on the issue of the public trust doctrine, none of these causes of action has yet been decided by the Superior Court. In short, of the nine causes of action asserted by the Town, one has been dismissed, and six remain pending and are not before us in this appeal.

The Town's two other claims—for prescription (Count IV) and custom (Count VI)—were the only two decided by the Superior Court in its October 16, 2012, judgment, and thus are the only two claims before us in this appeal. In asserting these causes of action, the Town did not make any challenge to the scope of the

public trust rights in the intertidal zone of the Beach, and, in fact, did not mention the intertidal zone in particular at all.[2]

We recognize that the State intervened in this matter and participated extensively throughout the trial on issues relating to the public trust rights in the intertidal zone. These issues, however, are implicated only by the Beachfront Owners' complaint. The State neither filed a cause of action relating to the public trust doctrine nor had any cause of action filed against it. Although its filing to the court was titled, "ANSWER, DEFENSES AND COUNTERCLAIMS OF STATE OF MAINE," the State asserted no counterclaims; instead, it stated as a defense to the Beachfront Owners' complaint that "[p]laintiffs' claims are barred because the public and individual members of the public have public trust rights which include the rights to use the intertidal zone of Goose Rocks Beach for recreational purposes related and unrelated to fishing, fowling and navigation."

We note again that the Beachfront Owners' complaint has not yet been decided and therefore is not at issue in this appeal; thus, we decline to address any defenses to that complaint, regardless of the Superior Court's choice to address those issues independently in its judgment.

In short, the only causes of action reflecting actual controversies that were decided by the Superior Court and appealed to us were those for a public prescriptive easement and an easement by custom. Neither of those causes of action requires

any determination of the scope of the public trust rights in the intertidal zone of Goose Rocks Beach, and thus any decision to address the public trust doctrine is, at this stage, merely advisory. *See Dinan v. Alpha Networks Inc.*, 2013 ME 22, ¶ 16, 60 A.3d 792 ("The prohibition on issuing advisory opinions is consistent with our defined judicial power.").

We therefore deny the Town's and the State's motions for reconsideration on the basis of the public trust doctrine. Any dispute regarding the extent of the public's right established through the public trust doctrine remains for trial.

## B. Public Prescriptive Easement

The Town's motion for reconsideration requests, as to its prescriptive easement claim, that the case "be remanded to the Superior Court for specific findings . . . on a parcel by parcel basis." In that portion of its motion, the Town also requests guidance as to the viability of our earlier decision in *Eaton* concerning another beach in York County.

### 1. Parcel–by–Parcel Analysis

We held in our decision that "the lack of evidence or findings of use specific to each Beachfront Owner's parcel" was one of two grounds on which to vacate the judgment, both as to the Town and as to the Backlot Owners. The Town now seeks an opportunity to relitigate its case before the Superior Court on the parcel-by-parcel basis that

2. Given the broad sweep of the Town's pleadings regarding the entirety of the Beach, we noted in our original decision that "the presumption of permission applies to the intertidal zone as well as to the dry sand for all general recreational activities." To avoid any misreading of the decision, we reiterate our statement that the presumption of permission regards only the existence of a public recreational prescriptive easement, and does not

apply to or trump the separate analysis of the extent of the public's rights in the intertidal zone pursuant to the public trust doctrine. *Lyons v. Baptist Sch. of Christian Training,* 2002 ME 137, ¶ 24, 804 A.2d 364 ("[I]t is the public recreational uses of land, not the nature of the land alone, that triggers application of the rebuttable presumption of permissive use *in public prescriptive easement cases.*" (emphasis added)).

we identified as required in our original decision.

■■■ A finding that a public prescriptive easement exists is no small matter. Such an easement necessarily deprives a private landowner of some property rights, most notably by limiting the owner's ability to exclude the public from his or her property. In determining that such a reduction in the landowner's property rights should be recognized and enforceable, a trial court must be meticulous in assuring that sufficient facts have been demonstrated linking the particular use alleged to the particular property at issue. This determination is completely dependent on the facts in a given matter—including the nature, duration, and type of use proved. It is not possible to establish the existence of a public prescriptive easement on a parcel of property without reference to the individual lot or lots on which the use is alleged to have occurred. *See D'Angelo v. McNutt*, 2005 ME 31, ¶ 9, 868 A.2d 239 (stating that it is in the very nature of a claim to adverse possession of property interests that persons may "typically only acquire that property which they actually possessed").

Before, during, and after the trial, however, the Town consistently opposed the Beachfront Owners' argument that a determination of any easement by prescription had to involve parcel-by-parcel evidence and findings.[3] The Town also was successful in convincing the trial court that the claimed public prescriptive easement could be decided in the absence of a parcel-by-parcel evidentiary record. Even on appeal, the Town argued that such specificity in evidence or findings simply is not required. Only now, after failing to prevail on appeal, does the Town specifically seek the opportunity to have the trial court undertake a parcel-by-parcel analysis.

We would not ordinarily provide an opportunity for a litigant to do what it has opposed at every turn during years of litigation. *See Me. Educ. Ass'n v. Me. Cmty. Coll. Sys. Bd. of Trs.*, 2007 ME 70, ¶¶ 15–20, 923 A.2d 914 (holding that a party's motion "seeking relief it had opposed during the original consideration of the action" is barred by the doctrine of judicial estoppel, which "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in an-

3. Throughout the trial court proceedings, the Town argued that it was not required to introduce parcel-by-parcel evidence. During a pretrial conference, for example, the Town's attorney stated, "[W]e intend to introduce evidence as to the whole beach. That's the nature of the evidence that we are being confronted with." When asked if the Town intended to introduce evidence specific to the lot of a particular party, the Town's attorney responded, "I'm not even exactly sure where the lot is on the beach." In its closing argument at trial, the Town argued,

> [The Beachfront Owners state] that the Town failed in its burden in this case because we did not place a particular member of the public on each beach owned by each plaintiff for each of at least 20 years. True. I think probably much to the relief of your Honor and the court staff and everyone

associated with this case, we did not attempt to spend the hundreds of hours it would take to place a member of the public on every one of those lots on every one of 20 years. What we've shown absolutely through the testimony, through the pictures, through the commercial activity is continuous use over all of the beach. And given the burden in this case I would contend that that's sufficient.

In its post-trial brief, as well, the Town asserted that it was "not required to place members of the public on the beach next to the property of each Plaintiff (and party-in-interest) for each day of each year during that same twenty year period." Instead, the Town argued, the evidence it presented showing general use "up and down the beach, from river to river *irrespective of property lines*" was sufficient. (Emphasis added.)

other phase' " (quoting *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001))).

We recognize, however, that the public's access to scarce resources such as sandy beaches in Maine is a matter of great importance and extraordinary public interest. The public is obliged to rely on legal representatives to assert that interest. In this singular case, in which those representatives chose a litigation strategy that had a substantial gap, equity demands that the matter should be remanded to allow the parties to present evidence as to the location of each Beachfront Owner's specific parcel, and to give the court an opportunity to consider the factual record of public use already developed, so that the court can determine whether the Town established—as to each of those specific parcels of property—the elements necessary to support a declaration of a public prescriptive easement.[4]

We note, however, that the Beachfront Owners have already incurred considerable expense and expended significant effort in responding to the Town's arguments. Thus, if the Town elects to have the Superior Court conduct a parcel-by-parcel reanalysis of the public prescriptive easement claim based upon the evidence of use already in the record, the trial court, in its discretion, may require the Town to reimburse the Beachfront Owners for their attorney fees and costs incurred as a result of those parcel-by-parcel reanalysis proceedings on remand. *See* M.R.App. P. 14(b)(3); *Baker v. Manter,* 2001 ME 26, ¶¶ 14, 17, 765 A.2d 583 (recognizing the

trial court's "inherent authority" to award attorney fees based on conduct in a judicial proceeding in "the most extraordinary circumstances" (quotation marks omitted)).

### 2. Adversity

Because we are remanding for further consideration on the claim of a public prescriptive easement, we address the Town's challenge to our decision on the alternative ground on which we vacated the judgment—adversity. We have noted on multiple occasions that an essential element of any prescriptive easement claim is the user's "claim of right that is adverse to the owner." *Androkites v. White,* 2010 ME 133, ¶ 16, 10 A.3d 677. How a party proves such adversity and with what evidence depends on the type of easement sought. *See Almeder,* 2014 ME 139, ¶¶ 18–34, 106 A.3d 1099.

■■■ When a claimed prescriptive easement is private, the property owner's knowledge of and acquiescence in continuous, open use by particular individuals for at least twenty years gives rise to a presumption that that use is adverse to the rights of the property owner. *Androkites,* 2010 ME 133, ¶¶ 14, 17, 10 A.3d 677. When the claimed prescriptive easement is public, however, the public—including a Town—is not permitted to benefit from the *presumption* that its use with the owner's knowledge and acquiescence was adverse to the owner, but must instead *prove* that its use was adverse to the owner. *Lyons,* 2002 ME 137, ¶¶ 18, 25, 804 A.2d 364. In doing so, the public must over-

---

**4.** To do so, the court must determine, with the presentation of additional evidence, the boundaries of each Beachfront Owner's parcel. Beyond that, the court may hear additional argument on the sufficiency of the parcel-by-parcel evidence, but the parties may not introduce any new or additional evidence as to the uses giving rise to the prescriptive easement claim, and must rely on the evidence as already presented to support that cause of action. They may, however, introduce evidence relevant to the title- and deed-based claims on which the court has yet to issue a decision, i.e., those remaining causes of action that the parties agreed would be tried in the second portion of the bifurcated trial, if the parties wish to go forward with those claims.

come a different presumption: the rebuttable presumption of permission inherent in Maine's open lands tradition. *Id.* ¶¶ 19, 25; *see also Town of Manchester v. Augusta Country Club,* 477 A.2d 1124, 1130 (Me.1984). The presumption of permission changes the lens through which we view the actions of the users and the owners because of the State's policy of encouraging and supporting the public's ability to use private property for outdoor activities. *Lyons,* 2002 ME 137, ¶¶ 19, 24, 25, 804 A.2d 364. As we have previously explained, the "presumption of permissive use does not result in burden shifting." *Lyons,* 2002 ME 137, ¶ 25, 804 A.2d 364. Rather, it "leaves with the [claimants] the burden of proving adversity through a claim of right hostile to the owner's interest, without benefit of any presumption of adversity arising from long term public recreational uses of the land." *Id.*

■ We reiterate that the public's recreational use of private land, when that use does not interfere with the ownership interest of the landowner, does not, without more, rebut the presumption of permission to establish adverse use. Because this record contains extensive evidence of general recreational use that may not satisfy the element of adversity, it will be critically important for the court on remand to apply the presumption of permission in determining whether the evidence establishes adversity as to each Beachfront Owner's parcel of property.[5]

■ Finally, the Town suggests that our decision overrules *Eaton.* It does not. To the extent that the Town reads *Eaton* to stand for the propositions that (1) general recreational uses by members of the public will be sufficient to establish a public prescriptive recreational easement, or (2) the

actions of a Town that support such general recreational uses will be sufficient to establish a public prescriptive recreational easement, such a reading is inaccurate. Consistent with our opinion, what *Eaton* does stand for is that the presumption of permission applies to the beaches of Maine, 2000 ME 176, ¶ 32, 760 A.2d 232, and that the presumption may be overcome if the party claiming the easement establishes public use that is adverse to the control of the property owners, *see id.* ¶¶ 34–40.

The State of Maine is blessed with beautiful beaches, rocky shorelines, mountains, and forests. When those lands are held in private ownership and the owners do not prohibit public use of the land, the owners will not stand at risk of public confiscation of their ownership rights by the beneficent act of permitting public recreational use of the land. To hold otherwise would fundamentally change the nature of this great State. The presumption of permission is intended to protect those private landowners who generously permit the public to use parts of their land for recreation. Our opinion clarifies the nature of that presumption for the benefit of both the public and the private landowners.

In sum, on remand, two tasks must be accomplished. First, the court must conduct proceedings and issue a decision on the remaining pending causes of action that were the subject of the second portion of the bifurcated trial, as well as any public trust doctrine claim, to the extent the parties wish to continue to assert those claims. Second, if the Town so elects, the court must determine the boundaries of each specific Beachfront Owner's parcel, reanalyze the evidence of use already in the record on a parcel-by-parcel basis to deter-

---

**5.** Further, it is undisputed that portions of the Beach are owned by the Town and by a conservation trust. To the extent that the Town asserts that evidence of use of those portions of Beach should affect the rights of Beachfront Owners with respect to their own parcels, that assertion is incorrect.

mine if the Town met its burden of establishing the elements of a public prescriptive easement as to each particular parcel, and then determine whether to award the Beachfront Owners their costs and fees related to that reanalysis.

**Summary**

We DENY the Town's and the State's motions related to the public trust doctrine, leaving that matter for trial on remand.

We DENY the Town's motion to the extent that it requests that we change the law requiring proof of use beyond general recreational use of the beach in order to divest property owners of a property interest through the assertion of a public prescriptive easement.

We GRANT the Town's motion to the extent that it now requests an opportunity to address the possibility of a public prescriptive easement on a parcel-by-parcel basis.

All other claims that have not yet been adjudicated remain for trial.

It is therefore ORDERED that the Town's motion for reconsideration is hereby DENIED in part and GRANTED in part. The State's motion for reconsideration is DENIED in full. The original *Almeder* opinion, 2014 ME 12, is withdrawn and replaced by *Almeder v. Town of Kennebunkport*, 2014 ME 139, 106 A.3d 1099, 2014 WL 6911002.

For the Court,*

/s/ Leigh I. Saufley

Chief Justice Leigh I. Saufley

* The participating members of the Court are Saufley, C.J., and Alexander, Silver, Mead, Gorman, and Jabar, JJ.